Good morning. Hans v. Mahoney, Bryant v. Idaho, and Wakefield v. Providence Health System are all ordered submitted on the briefs. So we will call the first case on the calendar, which is United States v. Ratigan. You may begin. Good morning, Your Honors. Christopher Bugbee from Spokane, Washington. I represent Mr. Ratigan. I would request two minutes for rebuttal. If it may please the Court and Counsel, this Court has requested that Counsel brief two issues. The first issue being whether or not Mr. Ratigan's claim has been procedurally defaulted by his failure to have raised the issue following his trial and then again failing to raise it on his direct appeal. It is our position that it is a well-settled principle of law that a procedural default of the Court's subject matter jurisdiction cannot occur. In other words, Mr. Ratigan's claim is that the government in this case failed at trial to prove that the Court had subject matter jurisdiction that deemed by way of approving Federal Deposit Insurance Corporation on the bank that was robbed in this case. When you say on the bank that was robbed, I had a lot of trouble with your briefing on this just to let you know my problem with your side of the case so you can address it in an argument. But you continuously talk about the branch that was robbed. When you say the bank that was robbed, from your brief, I kind of understand you to mean the branch in Spokane. But all that's necessary is that there be insurance proven that the bank that was robbed, which is U.S. Bank of Oregon, it's not a particular branch has insurance. So at least I don't understand where the whole concept comes from of arguing that there's no showing that this particular branch is insured, which seems to me like a total nonstarter. Well, Your Honor, and I understand the Court's position. I have two responses to that. Number one, I think even if you do believe the theory, which is put forward by the government, that it really is only the financial institution. Well, isn't that the bank that's insured? Isn't that what gets insurance? I mean, are you suggesting that particular branches of a national bank get insurance separately so that the branch in Tukwila is insured, but the branch in Seattle of Wells Fargo is not insured? What I'm suggesting is that the government has to put on evidence in a trial which justifies a jury's verdict. And in this case, there's two theories. There is certainly the theory that Your Honor is putting forth, that there is a financial institution which includes branches, individual branches, whereas as in this case, there was an individual branch in Spokane, which was the actual building, I suppose, that was the subject of the robbery. There is, as this Court is aware, an exhibit of the … Just to clarify, because I'm missing the link here, is the issue whether it was the bank, the branch, or was it the time at which it was insured? What's the evidence under either theory, whether it's the overall holding company or the branches? We have … It was insured on the day of the robbery. Your Honor, I think that what the government is required to prove … Well, would you try answering the question, please? You're … Maybe I … You just don't want to answer the question. Actually, I do. Well, then go ahead. Maybe I can ask for … Is it the branch or is it the bank? I think … I've offered in my reply brief that the Fifth Circuit, admittedly, has, in the Washburn case, indicated that it must be the branch. But my contention is that it does not matter in this case, because even if you accept the theory, it only has to be the financial institution. In other words, U.S. Bank, which includes the U.S. Bank in Portland, the U.S. Bank in Seattle, and the Spokane branch, it does not matter. Because when we take a look at the record in this case, it doesn't even suffice to prove that the U.S. Bank in Portland or Seattle was insured at the time of the robbery. Well, if a depositor … Let's … Let's … Let's let you get into that. But, I mean, on the first point of the branch versus the bank, I mean, if you deposit money in the U.S. Bank's branch in Spokane, you're not looking to that … The assets to pay your account aren't covered in that just by the assets that are, like, in the vault of that branch. You have a deal with the U.S. Bank, with the bank. And it's the bank … You're not suggesting that FDIC gives insurance that's by branch, are you? Is there any regulation or statute that would support that? I can't cite to one. And doesn't the law require that a federally chartered bank have insurance for depositors? Certainly, that is the case. And it's … And doesn't the law require that the bank, the entity that's the bank, have the insurance because it's assets that stand behind the deposits? I believe that is all true, yes. And I don't contend … And maybe you could address your timing issue. I will do that. Our contention is that the evidence, when you look at the evidence, I intend to focus my argument on the evidence that is in the record in this trial. That exclusively came from Mr. Beal, who was identified during the trial as Vice President for U.S. Bank, and then by way of Government's Exhibit No. 58. And when we look at Mr. Beal's testimony, it clearly … He was asked during the course of trial if … This was, as I know the Court is aware, 14 months after the robbery occurred, but is the U.S. Bank insured by the FDIC? His answer was, yes, it is insured. All the discussion that occurred between the U.S. Attorney at that point with Mr. Beal regarding the FDIC insurance was in the present tense. In other words, at the time that Mr. Beal testified, his testimony was that the bank is insured, and as we just discussed, his testimony was directed to the U.S. Bank, apparently, when we look at the exhibits, in Portland and Seattle. There is no evidence that was elicited by the Government at all during the course of this trial, and in particular, during the course of Mr. Beal's testimony, that would allow a jury to come to a reasonable inference that at the time that this robbery occurred, some 14 months earlier, the bank also had FDIC insurance. The only argument that the Government can make, and that it does make, is that when we look at Exhibit No. 58, which actually has two certificates and brackets. Breyer. It brackets the time, right? One's 1996, and one's 1988. That is correct. And it is … And so your contention is that what they needed to have was evidence that the 1988 and or the 1996 certificates were operative during the date on which the bank was actually robbed? Yes, Your Honor. That's exactly our contention. What's the 1996 certificate that was attached? 96. What's the date in 96? I'm sorry, the date? Yes. The 96 … I believe that's true. This robbery was in April? The robbery was on July 12th of 1996. I believe the … July 12th. Yes. So you have a certificate that's dated June? Actually, I think the certificate is dated … I know the certificate is dated June 13th of 1996. So the certificate's just a month or so before the robbery? That is correct, yes. Well, isn't that quite a distinction from the, you know, the Alley case where they said the certificate that existed was more than two years before the robbery? It certainly is a distinction, but there is more testimony in that case. If we look back at Mr. Beale's testimony, the only thing we can infer from his testimony is not that these certificates deal with the U.S.  His testimony was that this certificate or these certificates hang on the wall of every U.S. bank. He doesn't testify at all regarding the meaning of these certificates and whether or not they really do purport that the U.S. bank was insured by FDIC on the day of this robbery. It doesn't happen. The government could have easily elicited that testimony, and the government did not. So the government didn't do it in the most precise way if they didn't say, was the bank insured on July 12th? Is that what it is? Yes, Your Honor. On 96th. But, I mean, if there's a law that … if in general the law requires this bank to be insured, to have its accounts insured, which we can take judicial notice of what the regulations and laws are that govern the bank. And if they have a certificate showing that the bank is insured a month before this event, and then we have the guy testifying how many months after the event? Fourteen months following the event. Pardon me? Fourteen months. He's testifying 14 months later. Yes. So we know it's … there's … there's a certificate and evidence that's insured a month before the event. Testimony, it's insured 14 months after the event. Couldn't we … couldn't there be a presumption, if there's not contrary evidence shown, that it's insured one month after the certificate? May I respond? I see my time's running. You can respond to the Court's question. Thank you, Your Honor. No, I don't think that's appropriate. The government has a burden. The burden is beyond a reasonable doubt. The Court has to look at whether or not that burden was met. I don't know of any concept in law that would allow a presumption that the government has proved it by the fact that the testimony does not show the bank to be insured at the specific time. How about an inference? I don't think there's an appropriate inference either. Your time has expired. Let's hear it from the other side, and we'll give you a chance to respond. Thank you. May it please the Court. Tom Rice for the United States. I'm an assistant United States attorney from Spokane, Washington. Mr. Rice, could you, in the course of your argument, at least do the following two things? One, clarify what the law is as to whether a bank or a branch gets insurance. And second, clarify on the facts what Exhibit 58 shows as the date of insurance on the two certificates that it has. Yes, Your Honor. First, with respect to the bank or the branch, I think it's clear that the legal requirement is that the institution have the insurance certificate. And the wording of that comes from several cases, including those cases dealing with the ATM machine, as well as the armored car. Those cases specifically in the Ninth Circuit are Gillette, as well as Bloyos. Your opponent advances a Fifth Circuit case, he says, that holds to the contrary. Have you read that case, and what do you think it holds? Yes, Your Honor. The Fifth Circuit case, counsel says it was Washburn. Actually, the Fifth Circuit case, I believe, that he was citing to was Schultz. Schultz dealt with the Sugar Land Banks of Texas, in which the Texas Constitution did not allow for branch banking up until, I believe, 1988. And, therefore, the 1970 certificate of insurance by the FDIC was held to be insufficient by the Texas or the appellate court for the Fifth Circuit because of. Because of Texas law. Because of, yes, exactly. So I don't believe it's applicable at all to the Ninth Circuit, and specifically Washington. With respect to the bank or branch, it's clear that the deposits of the institution are insured by the FDIC. And that's all that's required. And we see that in those two cases, Gillette and Bloyos, the ATM machines in shopping centers and armored car, where the money isn't actually even in a bank or a branch. It's out on the streets and being embezzled by the armored car employees. So how about the factual evidence of what are the dates that are bracketed, to use Judge Trott's phrase, by, you know, by the testimony 14 months after the event and by whatever is the most recent certificate in Exhibit 58? May I grab the certificate journal right here? I don't want there to be any mistake about this. There's two certificates. Page one specifically refers to U.S. Bank of Washington National Association. It indicates the word Seattle, Washington on it. It is dated February 8th of 1988. That certificate … Under Ali, that's not sufficient. I mean, that's clearly. I mean, they had one that was 1985 and said that antedated the robbery. So you can't rely on that one under Ali, right? Actually, combined with the testimony and the … The present tense? And the certificate indicating that it's hung on the walls of all the U.S. Bank branches. Well, but in fact, clearly that couldn't be hung on the wall because it would have to be the 1996, which is actually for the United States National Bank of Oregon, which is a different entity, correct? It is. At that time, it was a different entity. And so there's no mistake. U.S. Bank was … There were two robberies or one attempted robbery and one robbery. Okay. Actually, three. They robbed the same branch in Spokane twice and blew it up once. But then they attempted to rob the bank in Portland, Oregon on October 8th of 1996. So there are two different … And that is the next certificate dealing with the Oregon branch. And that's the date of June 13th of 1996. That relates to the Oregon branch in Portland, Oregon, the attempted bank robbery on October 8th of 1996. So is that a different institution than the Oregon one from the Washington one? At that time, it was. Okay. So what you've got … Later, they were merged into one certificate. So what you've got, just so I understand it, you've got bank in Spokane is the Bank of Washington, right? Yes. Okay. And all you've got to show for that one that it was insured on the date of the robbery was the 1988 certificate and the testimony of the bank officer which said in present tense that it is insured, which is square on with what went down in L.E. and was held to be insufficient. You're correct, Your Honor, except that you left out the additional testimony that it is insured, that he's familiar with those bank branches, and that these hang on the walls of every branch. You're missing the point. The point is not whether … The point is when. And L.E. says you have to establish it was insured on the date of the incident, and it rejected the 1985 certificate in that case and said the present tense as the day of testimony doesn't account for what went on on the day of the robbery. That's what I'm trying to … I agree with Your Honor's factual recitation. I disagree with the legal conclusion. I believe that you can make an inference in a predated 1988 certificate that hangs on every branch's wall and that the bank vice president testifying that these branches are or is insured … We're going to have to assess whether that can be fairly distinguished from L.E. Okay. But here's a question. It's a separate issue that I hope you'll address before the time runs out on your argument. Is the whole issue procedurally defaulted because although jurisdiction can be raised at any time, I'm not sure a challenge to a jurisdictional fact can be raised at any time if it's not raised on direct appeal. What's the government's position on that? In other words … Your Honor … But if that wasn't challenged on direct appeal, can it be raised in a federal habeas 2255 petition? It's the government's contention that it can't be without showing cause and prejudice. Or actual innocence. Or actual innocence. If it's a jurisdictional element, it's constitutionally required, can be raised at any time, can't be waived. And that's the reason for the government's opening brief filed in December of 2002, briefing the issue of United States versus Cotton. In that case, and I've read it over and over and over again, it talks about jurisdiction or subject matter jurisdiction is what the court means today in terms of not being able to waive that. If this is not an FDIC-insured bank, it's not a federal bank robbery, right? It's a state bank robbery. Correct. So why is it that subject matter jurisdiction? Because in this case, the government charged a violation of federal law, 18 United States Code 2113, and the district court then has jurisdiction to determine that issue. Whether it's a failure of proof, ultimately, as to the robbery under the federal statute, is a different thing than what the unanimous Supreme Court said in United States versus Cotton, that today we mean only subject matter jurisdiction when we talk in terms of it cannot be waived. Okay. And assuming that reading of Cotton, assuming that, is your assertion that if it's not subject matter jurisdiction, the bank be federally insured? If it's not subject matter jurisdiction, we're relegated to merely an element of a federal crime. That's an element of offense. But if FDIC insurance status is the predicate for a federal offense, that if without that you have no federal offense, therefore no subject matter jurisdiction, then you would agree that it would be, under Cotton, non-waivable. No, Your Honor. If it's subject matter jurisdiction. If we were to disagree with you. I disagree that it's subject matter jurisdiction. I think it's merely just one of the many elements. Okay. That's what I'm just. So the point of distinction is, is it subject matter jurisdiction or not? If it is subject matter jurisdictional, then under Cotton it can't be waived. I agree with that analysis of the law. All right. But isn't there still an issue whether sufficiency of the evidence to show jurisdiction has to be exhausted? You can't waive subject matter jurisdiction, but, I mean, is any fact relating to jurisdiction always subject to reopening in a later petition? Based on Cotton, I don't believe it is. I think subject matter jurisdiction, the question whether the district court has jurisdiction to try this case, a criminal case in federal court, is subject matter jurisdiction. That's never waived. But when we get down to the actual elements of the offense, as we've seen in the United States Supreme Court case called Nieder, where they held materiality was one of the elements that wasn't proven, wasn't submitted to the jury. They held that under a harmless error standard or the Brex standard. What happens if long after a trial and long after the period for collateral relief had passed, everybody wakes up and says, oh, my gosh, this bank was never insured by the FDIC. How does somebody tackle that who finds himself convicted of bank robbery? Your Honor, I'm out of time. If I could answer that question. I'm not going to cut you off. All right. Based on Cotton and the defendants in Cotton that are serving 30-year prison terms when they weren't even indicted, charged or convicted of a cocaine offense carrying that penalty, I would say that the Supreme Court holds that you must show cause and prejudice for failing to bring that issue timely. Would that be actual innocence of the crime? It could be an innocent of the death penalty. Could you be innocent of a Federal crime if it turned out that the bank was never insured? I don't know the answer to that question, only on the sense that on the one hand, we have cases like Nieder in the Supreme Court where materiality was never even proved. Cases like in the Ninth Circuit, Montalvo, where the jury never found unanimously the three predicate CCE offenses. And, of course, the courts aren't saying you're innocent of that crime. They're relegating it to the Brecht standard of review. It's kind of like a murder case. It's a no-body murder case. Somebody gets convicted of murder with no body, long after the time is run for direct appeal and collateral review. The body pops up in Australia. I mean, you come in and your relief would be based on actual innocence, wouldn't it? Absolutely. I agree. The bank was never insured. Actual innocence. I would absolutely agree with respect to the body. I don't believe the Supreme Court holds that the elements of the offense, all elements of the offense necessarily, or an absence of each element of the offense necessarily makes you innocent of the crime. All right. Thank you, counsel. We'll give you a minute to respond if you care to take it. I only have a minute. I'm gladly to answer any questions that the court has or just make comments. How do you address the issue? What's your best argument that a jurisdictional fact is not procedurally barred from challenge? I just call the Court's attention to the historical basis of subject matter jurisdiction. It's one of the most jealously guarded principles in the Federal courts. That fact has to be proved. Well, that's the issue. What case says that FDIC jurisdiction is subject matter jurisdiction? Well, I think if you look at the cases that have been cited in my brief, I can't think of one specifically off the top of my head. I didn't really think at it, think of it in that context. But I think it's well accepted that it is subject matter jurisdiction. It is, indeed, an element that the government has to prove. All right. Thank you, counsel. Thank you. The case just argued will be taken to court and under submission. And we'll call the last case on the calendar today, Elvig v. Calvin Presbyterian Church. Thank you.
judges: Trott, Fisher, Gould